**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RUSLAN ISMANOV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| -vs- | ) | NO. CIV-26-0453-HE |
| | ) | |
| SCARLET GRANT, et al.,[1] | ) | |
| | ) | |
| Respondents. | ) | |

## <u>ORDER</u>

Petitioner Ruslan Ismanov, a citizen of Russia and a native of Kyrgyzstan, was arrested and detained by United States Immigration and Customs Enforcement (ICE) officers on February 11, 2026.  He is currently housed at the Cimarron Correctional Facility in Cushing, Oklahoma.

On March 10, 2026, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). He claims his detention, without the opportunity for release on bond, violates the Immigration and Nationality Act (INA) as well as the Fifth Amendment Due Process Clause and the Administrative Procedure Act.  Petitioner asserts that 8 U.S.C. § 1226(a), which allows for release on bond, applies to him.  The petition requests petitioner's release from custody, or alternatively, a bond hearing pursuant § 1226(a).  As directed, the federal

---

[1] *In accordance with Fed. R. Civ. P. 25(d), Markwayne Mullin, in his official capacity as Secretary for U.S. Department of Homeland Security, and Todd Blanche, in his official capacity as acting Attorney General of the United States, are substituted as respondents for Kristi Noem and Pamela Bondi, respectively.*

respondents filed a response to the petition, and petitioner filed a reply. The court, upon review, concludes the petition should be granted in part.

According to the petition and record evidence, petitioner presented himself, on March 21, 2023, to United States Customs and Border Protection (CBP) for inspection at the San Ysidro, California port of entry. Petitioner was paroled into the United States and provided a Form I-94 authorizing his stay until March 19, 2024.[2] He resided in Pittsburgh, Pennsylvania.

On May 3, 2023, petitioner filed an application for asylum. Subsequently, on May 10, 2023, the immigration judge closed petitioner's removal proceedings due to the government's failure to prosecute. Thereafter, on or about May 23, 2023, petitioner completed his biometrics appointment.

Based on his asylum application, petitioner was granted employment authorization from November 6, 2023 until November 5, 2028.

On March 19, 2024, petitioner's parole expired by its own terms. Petitioner remained in the United States.

On December 16, 2025, DHS issued a notice to appear, designating petitioner as an "arriving alien" and charging him as subject to removal under section 212(a)(7)(A)(i)(I) of the INA, codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who "is not in

---

[2] *The Form I-94 indicated petitioner's "Class of Admission" was "DT" indicating a type of humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). See* <u>JHolder JHoney Melean Gutierrez, Petitioner v. Unknown Party, #1 et al., Respondents,</u> *Case No. 1:26-cv-763, 2026 WL 962017, at *1 n. 2 (W.D. Mich. April 9, 2026) (citation omitted);* <u>Noori v. LaRose,</u> *807 F. Supp. 3d 1146, 1156 (S.D. Cal. 2025).*

possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required" by the INA [Doc. #1-1, ECF p. 3]. The notice to appear indicated it was served on petitioner by regular mail. Almost two months later, petitioner was arrested and detained by ICE. He was transported from Pennsylvania to Oklahoma for detention.

Petitioner's removal proceedings are now pending before the Aurora Immigration Court. According to an internet-based hearing notice, petitioner is currently scheduled for his individualized hearing on May 19, 2026 [Doc. #8-3].

In their briefing, respondents assert that petitioner is not subject to mandatory detention under § 1225(b)(2)(A) as claimed. Instead, they contend that petitioner, as an "arriving alien" who has a pending asylum application, is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), while the application is pending. The court, however, rejects respondents' contention. Mandatory detention under § 1225(b)(1)(B)(ii) applies to aliens who fall within either 8 U.S.C. § 1225(b)(1)(A)(i), referred to as the "Arriving Aliens Provision," or 8 U.S.C. § 1225(b)(1)(A)(iii), referred to as the "Designation Provision." *See* Bashir K.A. v. Klang, No. 25-cv-4559 (KMM/DJF), 2026 WL 452353, at *4 (D. Minn. Feb. 17, 2026). Petitioner does not fit within either provision.

The "Arriving Aliens Provision" subjects an alien "who is arriving in the United States" to expedited removal proceedings. Bashir, 2026 WL 452353, at *5; Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 305 (E.D.N.Y. 2025). Given its ordinary meaning, "'arriving' . . . "refer[s] to a process that occurs upon physical entry into the United States, not an interminable status that attaches to a noncitizen upon arrival.'" *Id*.

3

(quoting Rodriguez-Acurio, 811 F. Supp. 3d at 306 (quoting Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 90 (D.D.C. 2025)).  "Therefore, an 'arriving alien' is one who is in the process of reaching the United States."  Rodriguez-Acurio, 811 F. Supp. 3d at 306.  Here, petitioner was not in the process of reaching the United States when he was arrested in February 2026.  He had been residing in Pennsylvania for nearly three years.  Consequently, he cannot be classified as an alien "who is arriving in the United States" and therefore subject to expedited removal proceedings. Bashir, 2026 WL 452353, at *5 (petitioner not an alien who is arriving in the United States when arrested after living in Minnesota for more than one year); *see also* Rodriguez-Acurio, 811 F. Supp. 3d at 307 (petitioner not in the process of arriving in the United States when she entered the United States more than four years prior to her arrest).  Therefore, petitioner does not fall within the "Arriving Aliens Provision."

Turning to the "Designation Provision," it applies to an alien "who has not been admitted or paroled into the United States[.]" 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Accordingly, the provision "subjects aliens who have never been paroled into the United States to expedited proceedings, but not those who have, at any point been paroled." Bashir, 2026 WL 452353, at *5.  Here, petitioner was paroled in the United States.  Thus, he does not fall within the "Designation Provision."

Despite respondents' arguments, the court agrees with the Bashir and Rodriguez-Acurio courts that "neither the language of § 1182(d)(5)(A), nor the 'entry fiction' described in [Department of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020)], supports a conclusion that a noncitizen, like [petitioner], is subject to mandatory detention

under § 1225(b)(1)(B)(ii)." Bashir, 2026 WL 452353, at *6 (citing Rodriguez-Acurio, 811 F. Supp. 3d at 302-303, 306-308). While humanitarian parole is not "admission" into the United States and a noncitizen is deemed an applicant for admission once parole is expired, § 1182(d)(5)(A) "does not say that parolees 'return, upon the . . . expiration of their parole, to the position of an applicant for admission standing at the threshold of entry.'. . . Nor does it say that [they] are 'restored to the status that [they] had at the time of parole.'" Bashir, 2026 WL 452353, at *6 (quoting Rodriguez-Acurio, 811 F. Supp. 3d at 302) (quoting Coalition for Humane Immigrant Rights, 805 F. Supp. 3d at 85). The court agrees with the Bashir and Rodriguez-Acurio courts that "being treated like any other applicant for admission as discussed in § 1182(d)(5)(A) means 'that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal.'" Bashir, 2026 WL 452353, at *6 (quoting Rodriguez-Acurio, 811 F. Supp. 3d at 302) (citations omitted). "And the return-to-custody phrase 'may permit [petitioner] to be returned to ICE custody,' but [his] case, which necessarily includes the procedures required before detention, 'shall continue to be dealt with in the same manner as that of any other applicant for admission . . . And 'any other applicant residing in the United States . . . would be detained under § 1226.'" Id. (quoting Rodriguez-Acurio, 811 F. Supp. 3d at 303).

Therefore, the court concludes that § 1226(a), rather than § 1225(b)(1)(B)(ii), governs petitioner's detention, and thus, he is entitled to an individualized bond hearing.

The court will therefore grant the habeas corpus petition in part[3] and order respondents to provide petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven (7) business days or otherwise release him if no hearing is held within that time.

Accordingly, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Doc. #1] is **GRANTED in part**.  Respondents are **ORDERED** to provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **seven (7) business days** or otherwise release petitioner if he has not received a lawful bond hearing within that period. Respondents are further **ORDERED** to certify compliance by filing a status report within **ten (10) business days** of the court's order.

A separate judgment will be entered.

**IT IS SO ORDERED**.

Dated this 24th day of April, 2026.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[3] *In his reply, petitioner has withdrawn his Administrative Procedure Act claim.  And the court declines to decide the merits of petitioner's Fifth Amendment Due Process Clause claim in light of its ruling that § 1226(a) governs petitioner's detention.*